# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

THE FOURTH CORNER CREDIT UNION,
a Colorado state-chartered credit union,

                        Plaintiff,

v.

FEDERAL RESERVE BANK OF KANSAS CITY,

                        Defendant.

## COMPLAINT

Plaintiff, complaining of Defendant herein, would respectfully show this Honorable Court as follows:

## NATURE OF PROCEEDINGS

1. Pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure, and in accordance with the opinion of the 10th Circuit Court of Appeals in *Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City*, 861 F.3d 1052, 1068 (2017), which was a decision on appeal from the Order of Judge R. Brooke Jackson in *The Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City*, D.C. No. 15-cv-01633-RBJ, Plaintiff, The Fourth Corner Credit Union ("TFCCU"), respectfully requests that the district court apply the law of the case, render a declaratory judgment and grant TFCCU a mandatory injunction ordering Defendant Federal Reserve Bank of Kansas City ("FRB-KC" or the "Reserve Bank") to immediately issue TFCCU a master account at FRB-KC, pursuant to 12 U.S.C. §248a(c)(2), which statute unambiguously creates a nondiscretionary statutory obligation that FRB-KC issue a master account to *all*

...

depository institutions, to include TFCCU, a Colorado state-chartered credit union established to serve: (a) social groups supporting the legalization of marijuana, and (b) upon a change in federal law, state licensed marijuana-related businesses.

## THE PARTIES

2.      Plaintiff, TFCCU, is a Colorado state-chartered credit union. TFCCU was granted Charter No. 272 on November 19, 2014. It is a nonprofit corporation formed and registered on said date. Its principal place of business is located in the City and County of Denver. It was incorporated pursuant to the applicable provisions of the Colorado Revised Statutes. Said credit union exists, is in good standing, and is authorized to conduct business pursuant to all of the powers conferred upon it by law. TFCCU is regulated and supervised solely by the Colorado Division of Financial Services ("Colorado DFS"), a state agency with extensive knowledge and experience chartering and regulating *de novo* credit unions.

3.      Defendant, FRB-KC, is a private, independent entity run by its own board of directors. Six of the nine directors are appointed by private commercial member banks that thereby control FRB-KC. FRB-KC is not run by the Federal Reserve Board of Governors or any other part of the executive branch. The Reserve Bank acts with sufficient independence under private ownership and control such that it does not qualify as a government corporation. The Reserve Bank is considered a separate corporation owned solely by commercial banks within its district, distinct from the Board of Governors. The United States does not own stock in the Reserve Bank; it acts as the government's fiscal agent and all of the Reserve Bank's profits belong to the United States; it is a private corporation in which the government has an interest. The Reserve

Bank is not a department, commission, administration, authority or bureau of the federal government. The Reserve Bank's operation is not government financed. The Reserve Bank gives all revenue in excess of expenses to the U.S. Treasury. No statute designates the Reserve Bank as a federal agency; the Reserve Bank is a tax-exempt federal instrumentality; the Reserve Bank does not need to consult the United States Attorney or even the Board of Governors to pursue legal action. FRB-KC is a regional Reserve Bank that is part of the Federal Reserve System. It is distinct from the Federal Reserve Board of Governors; it is owned and majority controlled by large commercial member banks; it is directly supervised in its daily operations by a separate board of directors – not the federal government; its employees are not considered federal employees, officials, or representatives for purposes of 12 U.S.C. §341. Federal Reserve Banks are not federal agencies pursuant to 28 U.S.C. §451. FRB-KC serves the Tenth Federal Reserve District, a seven (7) state region, which includes Colorado. It operates a Federal Reserve Branch Bank in the City and County of Denver. Its Denver Branch office acts as the Federal Reserve's connection to this part of the country. FRB-KC's cash processing and distribution in Denver provide currency and coin to financial institutions in Colorado, Wyoming and northern New Mexico, as well as parts of western Kansas and western Nebraska. The Reserve Bank employs bank supervision staff in Denver. It has an active regional and community presence responsible for promoting fair and impartial access to credit and equal access to its payments services across the region. The Reserve Banks provide customer service to financial institutions nationwide that have the legal right to equal access to Federal Reserve products at nondiscriminatory prices. The Reserve Bank supplies payment services to the public through depository institutions like banks and

credit unions. It provides financial services in Colorado to banks and credit unions. It employs persons, owns property, and conducts substantial business in this judicial district.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to the following statutes: (a) 28 U.S.C. §1331, providing for "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States"; (b) 28 U.S.C. §1367, providing for "supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy"; and (c) 28 U.S.C. §2201, providing for a declaration of rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) because Defendant FRB-KC, an entity with the capacity to sue and be sued in its common name, resides in this judicial district pursuant to 28 U.S.C. 1391(c)(2). FRB-KC has purposefully availed itself of the privilege of conducting business in this District; it maintains a regular place of business in this District; it conducts business in this District; the claim arose in this District; material witnesses are located in this District; and, it is subject to this Court's jurisdiction under C.R.S. §13-1-124, Colorado's long arm statute. TFCCU and FRB-KC have not entered into any agreement containing a forum selection clause.

6. FRB-KC is not an administrative agency. There exists no administrative procedure by which TFCCU can compel FRB-KC to perform its statutory obligations.

The Administrative Procedures Act, 5 U.S.C. §500 *et seq.*, is not applicable to this proceeding.

## PROCEDURAL HISTORY OF PRIOR LITIGATION

7. In November 2014, after receiving its state-credit union charter, TFCCU submitted the standard master account documents to FRB-KC and requested that FRB-KC issue a master account.

8. On July 18, 2015, FRB-KC denied TFCCU's request for a master account, claiming it had unfettered discretion to determine which depository institutions received master accounts, effectively crippling TFCCU's business operations to date.

9. On July 30, 2015, TFCCU filed suit against FRB-KC in this district court seeking a declaratory judgment and injunction commanding FRB-KC to issue a master account to TFCCU, claiming that §248a(c)(2) unambiguously entitled TFCCU to a master account.

10. On January 5, 2016, the district court dismissed TFCCU's claim with prejudice, ostensibly ruling that while §248a(c)(2) unambiguously entitled TFCCU to a master account, the district court was unable to grant equitable relief to TFCCU because in the future TFCCU might use the master account to service Colorado state-licensed marijuana related businesses ("MRBs") in violation of federal law. *D.C. Docket Entry 46, Page 7.*

11. On January 14, 2016, TFCCU appealed the district court's dismissal of its claim with prejudice to the 10th Circuit Court of Appeals.

12. On June 27, 2017, in *Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City*, 861 F.3d 1052 (2017) the 10th Circuit vacated the district court's

5

order and remanded the case to the district court with instructions to dismiss TFCCU's claim *without* prejudice inasmuch as it was appropriate to allow TFCCU "to proceed with its claims" for a master account. *Id.* at 1053. Each of the 3 judges on the panel issued a separate opinion.

13. Insofar as pertinent to the appeal, Judge Bacharach opined §248a(c)(2) unambiguously entitles TFCCU to a master account, and he rejected all of FRB-KC's defenses to the issuance of the account. *Id.* at 1068. Judge Matheson opined that TFCCU's appeal was premature because TFCCU had not submitted an application to FRB-KC for a master account with "the new condition that it will not serve MRBs, unless legal . . . " *Id.* at 1062. Judge Moritz opined that the district court correctly declined to lend its aid to illegal activity, stating she would affirm the dismissal with prejudice. *Id.* at 1058.

14. On July 20, 2017, the district court dismissed TFCCU's claim without prejudice. *D.C. Docket Entry 61*.

## GENERAL ALLEGATIONS

15. The standardized forms used by all depository institutions to obtain a master account are posted on the Federal Reserve Bank Services website. The standard master account forms are: (1) Resolutions Authorizing an Institution to Open and Maintain Accounts and Use Services (6.18.04), (2) Federal Reserve Operating Circular 1, Appendix 1, Master Account Agreement (Revised September 2011), and (3) Federal Reserve Bank Official Authorization List (Last Updated: 08/12), (hereafter these 3 documents are collectively referred to as the "standard master account documents").

16. Federal Reserve Operating Circular 1, Appendix 1, Master Account Agreement (Revised September 2011) states at the bottom of Page 1, "Processing may take 5-7 business days. Please contact the Federal Reserve Bank to confirm the date the master account will be established."

17. The processing of a master account request is a ministerial act.

18. FRB-KC must issue a master account to all depository institutions located in the 10th Federal Reserve District that request a master account.

19. FRB-KC does not regulate or supervise state-chartered credit unions.

20. The standard master account documents do not require the submission of any items other than the submittal of the standard master account documents for any depository institution to obtain a master account.

21. There is no statute, regulation, operating circular, rule, or written internal procedure or written protocol that requires a depository institution to submit any item other than the standard master account documents for a depository institution to obtain a master account.

22. The only documents any depository institution has ever been required to submit to FRB-KC to obtain a master account are the standard master account documents.

23. FRB-KC may not discriminate between depository institutions in the issuance of master accounts.

24. FRB-KC has never refused to issue a master account to any depository institution, other than its refusal to issue a master account to TFCCU in July 2015. *D.C. Docket Entry 45.*

25. The submission of a business plan is not part of the standard master account documents. *Fourth Corner, supra, 861 F.3d at 1079.*

26. The submission of information regarding share deposit insurance is not part of the standard account documents.

27. The submission of information regarding current and projected capital funding is not part of the standard account documents.

28. The submission of information about a depository institution's senior leadership is not part of the standard account documents.

29. The law of this case established by the 10th Circuit Court of Appeals and this district court in the prior litigation between TFCCU and FRB-KC is that §248(a)(c)(2) "unambiguously entitles Fourth Corner to a Master Account." *Fourth Corner, supra, 861 F.3d 1068*; D.C. Docket Entry 46, Page 7.

30. FRB-KC's argument it has discretion to issue a master account was "properly rejected" by the district court. *Fourth Corner, supra, 861 F.3d at 1068.* "This interpretation of §248a(c)(2) is supported by (1) repeated interpretations by the Board of Governors and regional Federal Reserve Banks, (2) the legislative history, and (3) the longstanding interpretation of this statute by other courts and academics." *Id.* "The statutory language does two things: It ensures universal access to certain bank services and provides uniform pricing for them." *Id.* "The statute uses the term 'shall,' which indicates a congressional command." *Id.* "It is undisputed that the application for a master account does not include any information about the applicant's business plan." *Id.* at 1079. FRB-KC "came up with reasons for freezing [TFCCU] out [that were] conceived for this case." D.C. Docket Entry 45, Page 67, lines 8-11.

## SPECIFIC POST-APPEAL ALLEGATIONS

31. On June 30, 2017, outside legal counsel for FRB-KC advised TFCCU's attorney that "[i]f TFCCU elects to file a renewed application for a master account it should do so through the normal channels dictated by Reserve Bank procedures."

32. Thereafter, TFCCU's President and Chief Executive Officer, Deirdra O'Gorman contacted FRB-KC to confirm that the standard master account documents contained on the Federal Reserve Bank Services website were the proper forms to submit for a depository institution to obtain a master account. Ms. O'Gorman was duly advised that the standard master account forms contained on the Federal Reserve Bank Services website were current and should be utilized to obtain a master account.

33. On August 10, 2017, Ms. O'Gorman received a letter from Mr. Rick Lay, Assistant Vice President of FRB-KC. Mr. Lay's letter stated that TFCCU's "unique nature, structure, and history of TFCCU's business raise legal and policy issues in connection with TFCCU's account request." Mr. Lay's letter requested a list of information from TFCCU not required by the standard master account documents. All of the said requests deviated from the existing standard procedure to obtain a master account. Mr. Lay's letter made it clear to TFCCU that FRB-KC continues to maintain its incorrect legal position that it has discretion to determine which depository institutions are entitled to a master account, notwithstanding the law of the case that properly rejected this argument.

34. On September 12, 2017, TFCCU submitted to FRB-KC properly completed, duly executed, originals of the standard master account documents.

35. On September 12, 2017, TFCCU also submitted to FRB-KC a letter from Chris Myklebust, Commissioner of Colorado Division of Financial Services, dated August 28, 2017, attesting to the fact that TFCCU "has complied with all applicable requirement(s) of the Colorado Division of Financial Services and its charter is in good standing with this office."

36. Colorado DFS has the sole sovereign authority to charter, regulate and supervise TFCCU.

37. Colorado DFS granted TFCCU a charter and in doing so, it exercised its discretion and sovereign authority, pursuant to C.R.S. §11-30-101(3)(a) and (b), to determine TFCCU's safety and soundness. Following the 10th Circuit's opinion, Colorado DFS certified TFCCU's compliance with all applicable requirements of state law. Said certification is entitled to a presumption of validity. Colorado DFS is a state agency with extensive knowledge and experience chartering and regulating *de novo* credit unions. Alternatively, FRB-KC has very limited experience with *de novo* credit unions.

38. Under the dual banking structure, FRB-KC does not have jurisdiction or authority to second-guess Colorado DFS, or to reject its determination.

39. FRB-KC is not the regulator or supervisor of any state-chartered credit union.

40. FRB-KC does not have authority to regulate or supervise TFCCU, nor can it act to nullify or alter its charter, or overrule Colorado DFS.

41. On September 12, 2017, TFCCU also submitted to FRB-KC a "Board Resolution of The Fourth Corner Credit Union" wherein on July 17, 2017, the Board

resolved that "in all of its activities The Fourth Corner Credit Union (4CCU) shall follow state and federal law" and that "The Fourth Corner Credit Union shall not serve marijuana-related businesses until there is a change in federal law that authorizes financial institutions to serve marijuana-related businesses." TFCCU advised FRB-KC that this "Resolution reiterates the repeated representations made to FRB-KC, the district court and the 10th Circuit Court of Appeals that 4CCU will follow the law."

42. "Servicing members of social groups supporting the legalization of marijuana [is] legal, and no one has suggested otherwise." *Fourth Corner, supra, 861 F.3d at 1066.*

43. "Fourth Corner . . . is authorized to pursue its broader mission of servicing supporters of legalization." *Id. at 1075.*

44. In its September 12, 2017 letter, TFCCU requested that FRB-KC issue TFCCU a master account within the time period established by the Federal Reserve applicable to all depository institutions, that being within 5-7 business days of its receipt of the standard master account documents, as stated on Federal Reserve Operating Circular 1, Appendix 1, Master Account Agreement (Revised September 2011) at the bottom of Page 1.

45. As opined by Judge Matheson, TFCCU resubmitted the standard master account documents and also made an unambiguous promise to FRB-KC to refrain from servicing marijuana-related businesses until there is a change in federal law that authorizes financial institutions to serve marijuana-related businesses. *Fourth Corner, supra, 861 F.3d at 1062.*

46. TFCCU will follow and obey the judicial determination that servicing marijuana-related businesses would violate federal drug laws.

47. With the submission of the standard master account documents, TFCCU promised FRB-KC it would service marijuana-related businesses only if doing so is legal.

48. TFCCU intends to serve only supporters of the legalization of marijuana, until such time as federal law authorizes service of marijuana-related businesses.

49. Without a master account, TFCCU is unable to conduct any business, even with members of social groups supporting the legalization of marijuana, and as determined by Judge Bacharach, this foists a "substantial hardship on Fourth Corner" and FRB-KC "does not suggest otherwise." *Id.* at 1079.

50. On September 21, 2017, Mr. Lay wrote TFCCU a letter. He stated the "information we are seeking is necessary because of the *de novo* nature of your institution, and because of the Bank's need to confirm how your institution proposes to operate its business without serving marijuana-related businesses." The district court previously rejected FRB-KC's *de novo* argument. *D.C. Docket Entry 45, Page 56, lines 10-11; Page 57, lines 3-8.* Mr. Lay's letter also stated, "[t]o be clear, the Bank has not denied TFCCU's request for a master account, but the Bank does require answers to these questions as we undertake our due diligence process, which will take longer than TFCCU's requested timeframe of 5-7 business days." The point is not that FRB-KC "has not denied TFCCU's request for a master account." The point is FRB-KC has not issued the master account as mandated by law within the timeframe the Federal Reserve established for the issuance of master accounts to all depository institutions. It has

invoked an illegal discriminatory procedure requesting information it is not entitled to receive from any depository institution seeking a master account.

51. On September 25, 2017, TFCCU requested that FRB-KC identify the statutes, regulations, operating circulars, written procedures or written protocols which grants FRB-KC discretionary authority over the issuance of master accounts. FRB-KC has never provided such information, despite the fact it has been repeatedly requested since November 2014. TFCCU advised FRB-KC that if FRB-KC did not follow the law and honor its established timeframe and issue a master account to TFCCU by the close of business on September 27, 2017, TFCCU would file suit to obtain the account.

52. On September 27, 2017, Ms. Tara L. Humston, Vice President of FRB-KC, wrote TFCCU and stated, "the Bank has not denied TFCCU's request for a master account, and is committed to working with you to adjudicate the request." FRB-KC has no discretion to "adjudicate" TFCCU's request. TFCCU's entitlement to a master account was adjudicated by the district court and the 10th Circuit Court of Appeals, both of which determined TFCCU was unambiguously entitled to a master account. *Fourth Corner, supra, 861 F.3d 1068*; *D.C. Docket Entry 46, Page 7.* Ms. Humston failed to identify the statutes, regulations, operating circulars, written procedures or written protocols that allegedly give FRB-KC discretionary authority over the issuance of master accounts – as the law of the case has established, no such authority exists. Ms. Humston's letter again made clear to TFCCU that FRB-KC continues to maintain the incorrect legal position that it has discretion to "adjudicate" which depository institutions are entitled to master accounts; it has invoked an illegal discriminatory procedure requesting information it is not entitled to receive from any depository institution seeking

a master account; and it has failed to issue the account within the timeframe it established for the issuance of master accounts to all depository institutions.

## FOR A FIRST CAUSE OF ACTION

### (Declaratory Judgment)

53. Plaintiff repeats and realleges the foregoing allegations of the Complaint as if set forth herein verbatim.

54. There exists a case of actual controversy in the constitutional sense - a real and substantial controversy admitting of specific relief through a decree of a conclusive character between TFCCU and FRB-KC that pertains to the proper legal interpretation of §248a(c)(2) and the law of the case.

55. This Court should enforce the law of the case and/or declare anew that §248(a)(c)(2) "unambiguously entitles Fourth Corner to a Master Account." *Fourth Corner, supra, 861 F.3d 1068*; *D.C. Docket Entry 46, Page 7*.

56. FRB-KC's argument it has discretion to issue a master account was "properly rejected" by the district court. *Id.* "This interpretation of §248a(c)(2) is supported by (1) repeated interpretations by the Board of Governors and regional Federal Reserve Banks, (2) the legislative history, and (3) the longstanding interpretation of this statute by other courts and academics." *Id.* "The statutory language does two things: It ensures universal access to certain bank services and provides uniform pricing for them." *Id.* "The statute uses the term 'shall,' which indicates a congressional command." *Id.* "It is undisputed that the application for a master account does not include any information about the applicant's business plan." *Id.* at 1079. FRB-KC "came up with

reasons for freezing [TFCCU] out [that were] conceived for this case." *D.C. Docket Entry 45, Page 67, lines 8-11.*

57. §248a(c)(2) requires that "All Federal Reserve bank services covered by the fee schedule *shall be available to nonmember depository institutions* and such services *shall be priced at the same fee schedule applicable to member banks*, . . ."

58. TFCCU is a nonmember depository institution.

59. FRB-KC has refused to make "Federal Reserve bank services covered by the fee schedule" available to TFCCU in violation of §248a(c)(2).

60. §248a(c)(2) is mandatory, in that it provides that Federal Reserve Banks' services "shall" be made available to non-member depository institutions.

61. FRB-KC does not have discretion to decide which non-member depository institutions are entitled to Federal Reserve Bank services. The word "shall" connotes a mandatory requirement, not subject to discretionary whim.

62. FRB-KC must provide equal access and non-discriminatory pricing to Federal Reserve bank services to all depository institutions.

63. The Federal Reserve's established procedure applicable to all depository institutions is that master accounts are routinely processed within 5-7 business days. FRB-KC has failed to follow this procedure.

64. The Court should enforce the law of the case and/or declare anew that §248(a)(c)(2) "unambiguously entitles Fourth Corner to a Master Account." *Fourth Corner, supra, 861 F.3d 1068*; *D.C. Docket Entry 46, Page 7.*

### FOR A SECOND CAUSE OF ACTION
### (Mandatory Injunctive Relief)

15

65. TFCCU is entitled to the issuance of a preliminary and permanent mandatory injunction commanding FRB-KC to comply with the statutory mandate of §248a(c)(2), the established 5 – 7 business day time period for the issuance of master accounts applicable to all depository institutions, and the law of the case.

66. In that this is an action to compel the performance of an unambiguous statutory obligation, TFCCU is not required to plead or prove the traditional elements applicable to general requests for injunctive relief, as Congress has mandated the action sought by TFCCU.

67. Notwithstanding the aforesaid, FRB-KC has violated a statutory mandate that unambiguously entitles TFCCU to a master account within 5 to 7 business days from the submission of the standard master account documents and as such TFCCU should achieve actual success on the merits; TFCCU has suffered immediate, irreparable injury which may be prevented by injunctive relief, in that the failure to timely issue a master account has, in the words of Judge Bacharach, "foist[s] a substantial hardship on Fourth Corner, and the Federal Reserve Bank of Kansas City does not suggest otherwise." *Id.* at 1079. For example, during the delay in issuance of the account "Fourth Corner will remain unable to access any Federal Reserve services. As a result, Fourth Corner will remain unable to conduct any business, even with members of social groups supporting the legalization of marijuana." *Id.* The said delay causes irreparable harm to TFCCU, for which no plain, speedy and adequate remedy at law exists. The injunction if issued will not disserve the public interest. There is no harm to FRB-KC, as upon issuance of the master account TFCCU will be legally and contractually bound to follow the rules applicable to all depository institutions. Further, at all times relevant hereto, TFCCU has

been bound to follow Colorado law, and its regulator, Colorado DFS has recently certified that TFCCU is in compliance will all aspects of the law.

68. As a result of FRB-KC's illegal failure to timely act, TFCCU will be unable to plan and conduct business operations and fulfill its primary mission to bring about a change in federal law that authorizes all depository institutions to provide services to marijuana-related businesses.

69. A change in federal law to authorize depository institutions to serve MRBs is in the public interest.

*70.* The district court stated that "(common sense confirms)" operations of MRBs on a cash-only basis creates a significant public safety concerns for customers and employees, while making regulation, auditing and tax collection more difficult. *D.C. Docket Entry 46, Page 2.* Further, the district court regarded the cash only situation as "untenable" and stated that it hoped the situation "will soon be addressed and resolved by Congress." *Id. at Page 9.*

71. On January 1, 2018, retail marijuana sales will begin in California. The State of California is the world's sixth largest economy, only outpaced by the United States as a whole. This event magnifies the untenable cash-only situation exponentially and could trigger a change in federal law to authorize depository institutions to serve MRBs.

72. TFCCU's relentless mission to organize its business operations and change federal law to authorize depository institutions to serve MRBs is nationally important and urgent. The accomplishment of this mission should not be delayed any

further by FRB-KC's blatantly illegal conduct in failing to timely issue a master account to TFCCU.

73. TFCCU is entitled to a preliminary and mandatory injunction requiring FRB-KC to immediately grant TFCCU a master account at FRB-KC.

**WHEREFORE**, TFCCU prays unto this Honorable Court as follows:

1. For a declaratory judgment and a preliminary and permanent mandatory injunction requiring FRB-KC to immediately grant TFCCU, a Colorado state-chartered credit union, a master account at FRB-KC;

2. For an order providing for a speedy hearing on this declaratory judgment and injunctive relief action, thereby advancing this cause on the Court's calendar as permitted by F.R.C.P., Rule 57(m); and

3. For such other and further relief as this Court may deem just and proper.

Date: September 29, 2017

Respectfully submitted,

*s/ Mark A. Mason*
**Mark A. Mason**
**Gabrielle Z. Lee**
*Counsel of Record*
THE MASON LAW FIRM, P.A.
Tidewatch Centre on Shem Creek
465 W. Coleman Boulevard, Suite 302
Mount Pleasant, South Carolina
Telephone: (843) 884-1444
FAX: (843) 884-3595
E-mail: mark@masonlawfirm.com

*Counsel for Plaintiff*